UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLVIN MCCRIGHT,<br>Plaintiff,<br>v.<br>E. WEAVER, et al.,<br>Defendants. | Case No. 24-cv-08695-RFL<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 39 |

## I. INTRODUCTION

Plaintiff Colvin McCright alleges in his 42 U.S.C. § 1983 action that Defendants Peters, Weaver, and Herndon failed to protect him from other inmates and were deliberately indifferent to his serious medical needs when they denied him a single cell. Defendants move for summary judgment on the grounds that there is no genuine dispute as to any material fact and they are entitled to qualified immunity. (Dkt. Nos. 39.) Plaintiff filed an opposition (Dkt. No. 42) and Defendants filed a reply (Dkt. No. 43).

Defendants' summary judgment motion is GRANTED. Defendants presented undisputed evidence that Plaintiff was not placed at risk of harm by other inmates and they were not deliberately indifferent to his safety or his health by refusing to place him a single cell. Plaintiff failed to present sufficient evidence or arguments that Defendants put his health or safety at risk.

## II. BACKGROUND

### A. Complaint

Plaintiff alleged as follows: He was previously assaulted by a cellmate resulting in a broken jaw and had other fights with cellmates that appear to be driven by his conviction for

patricide. (Dkt. No. 14 at 4, 21.) When Plaintiff had a cellmate and they became aware of his conviction, there was increasing tension resulting in an inability to sleep due to Post-Traumatic Stress Disorder (PTSD) and fear of being assaulted. (*Id.* at 5.) Despite these issues, Defendants Peters and Weaver told Plaintiff that he was required to accept a cellmate and issued him a Rules Violation Report (RVR) for failing to comply. (*Id.* at 4-5.) Plaintiff informed Defendant Herndon that he was in danger if double celled because he was attacked on a prior occasion when Herndon double celled him. (Dkt. No. 21 at 2.) On the prior occasion, Herndon told Plaintiff that he would be compatible with the new cellmate and if there was an issue, he would be moved the next day. (*Id.*) Plaintiff was not moved and a few days later the cellmate had a mental breakdown and attempted to assault Plaintiff. (*Id.*) Herndon denied any knowledge of this prior incident and informed Plaintiff that he would receive a disciplinary report for failing to be double celled. (*Id.* at 3.)

**B. Undisputed Facts**

The following facts are undisputed unless specifically noted otherwise. Pursuant to state regulations, a classification committee must review recommendation from custodial or medical staff for inmate placement in a single cell. Cal. Code. Regs. tit 15 §§ 3269(f), (g). Plaintiff has been housed at San Quentin Rehabilitation Center (SQRC) since 2015. (Motion for Summary Judgment (MSJ), Matsumura Decl. ¶ 6, Ex. E.) Since 2015, Plaintiff has been approved for a double cell by the facility classification committee. (*Id.* ¶ 5, Ex. D.)

**Housing History**

Prior to Plaintiff's arrival at SQRC, he had incidents involving cellmates on three different occasions. (*Id.* Ex. F, Deposition at 16:19-24:5.) Plaintiff was in a fight with his cellmate at Folsom State Prison, after the inmate was moved into Plaintiff's cell for fighting with a previous cell mate. (*Id.* at 16:14-17:13, 23:12-16.) He was in another fight with a cellmate at Folsom State Prison when a newly arrived cellmate attempted to punch Plaintiff and then they started fighting. (*Id.* at 19:20-20:17, 23:24-25.) Later that day the cellmate punched him again, breaking Plaintiff's jaw. (*Id.* at 19:20-20:17.) He does not remember what years these fights

occurred. (*Id.* at 16:20-22.) Plaintiff includes an exhibit reflecting that his jaw was broken by a cellmate during a fight in 1990. (Dkt. No. 42-1 at 24.)

Plaintiff was also in a fight at either High Desert State Prison or Pelican Bay State Prison. (MSJ, Matsumura Decl. Ex. F, Deposition at 23:21-24.) Plaintiff told a correctional officer that he did not want a cellmate and later that day Plaintiff was injured by the cellmate. (*Id.* at 17:14-19:5.) He does not remember what year this fight occurred.[1] (*Id.* at 16:20-22.)

Since his arrival at SQRC, Plaintiff was only involved in one fight with a cellmate. (*Id.* at 28:6-31:5.) Plaintiff does not remember the year but believes it occurred around 2020. (*Id.* at 31:6-9.) Plaintiff and the cellmate engaged in a fight regarding the volume of the radio or television. (*Id.* at 30:8.) Plaintiff was not hurt but the cellmate received some knots on his head and an injured lip. (*Id.* at 30:18-31:5.) There was no documentation for this fight.[2] (*Id.* at 30:19-22.) After this incident, Plaintiff began to refuse cellmates. (*Id.* at 43:24-44:5.)

By refusing cellmates, he received RVRs and was placed on C-Status and was moved to restricted housing intermittently since 2023. (*Id.* at 43:24-44:5.) Plaintiff has not had a cellmate since his placement on C-Status in 2023. (*Id.* at 44:2-5, 52:20-53:2.)

**Defendant Weaver**

On May 14, 2024, Weaver was the desk officer at the SQRC West Block Housing Unit. (MSJ, Weaver Decl. ¶¶ 3-4.) That day the housing unit received eleven new inmates, one of whom was assigned to be Plaintiff's cellmate. (*Id.* ¶ 5.) Weaver brought the new cellmate to Plaintiff's cell, but Plaintiff refused to allow the individual to enter. (*Id.* ¶ 6.) Plaintiff stated that he would not accept a cellmate. (*Id.*) Weaver did not force the inmate into the cell despite Plaintiff being approved for a double cell. (*Id.* ¶¶ 8-10.)

[1] Plaintiff includes an exhibit reflecting that he was in a fight at Pelican Bay State Prison in 2001. (Dkt. No. 42-1 at 25.)

[2] In his opposition, Plaintiff describes an incident at SQRC where Herndon placed a new cellmate with him. (Dkt. No. 42-1 at 3.) Plaintiff told Herndon that he had issues with cellmates, and Herndon responded that the inmate would be moved if there was a problem. (*Id.*) Plaintiff informed a different correctional officer that he was not compatible with the cellmate, but no move occurred. (*Id.*) Plaintiff states that there was a fight and his shoulder was injured, but he did not report the incident. (*Id.* at 3-4.)

Weaver was not on the classification committee or involved in the decision for Plaintiff to be double celled and did not have any authority over Plaintiff's classification. (*Id.* ¶ 8.) Weaver was not aware of any prior altercations between Plaintiff and others and was not aware of any danger to Plaintiff. (*Id.* ¶ 9.) Plaintiff disputes this assertion and contends that he told Defendants he was previously assaulted by cellmates and once received a broken jaw. (Dkt. No. 42 at 4, 6-7.)

Plaintiff's refusal of the cellmate was a violation of section 3005 of Title 15, which provides that inmates are not allowed to refuse to accept a housing assignments, including a double cell assignment. (MSJ, Weaver Decl. ¶ 7.) Weaver issued a RVR against Plaintiff. (*Id.* ¶ 9.) This is the only RVR Weaver issued against Plaintiff. (*Id.* ¶ 3.)

**Defendant Peters**

On June 25, 2024, Peters was the desk officer at the SQRC West Block Housing Unit. (MSJ, Peters Decl. ¶ 4.) Plaintiff was informed that he would be receiving a cellmate. (*Id.* ¶ 4.) Plaintiff later approached Peters and stated that he would not accept a cellmate. (*Id.*) Peters informed Plaintiff that he would be issued a RVR for his refusal. (*Id.* ¶ 4.) Plaintiff was not forced to accept a cellmate despite being approved for a double cell. (*Id.* ¶¶ 4, 7.)

On January 22, 2025, Peters was again the desk officer at Plaintiff's housing unit. (*Id.* ¶ 5.) Peters informed Plaintiff that he would be receiving a cellmate. (*Id.*) Plaintiff stated he would not accept a cellmate and that Peters should just issue him a RVR. (*Id.*) Plaintiff had five other RVRs for refusing housing, and Peters told him he would receive a new RVR. (*Id.*) Plaintiff was not forced to accept a cellmate. (*Id.* ¶ 5.)

Peters was not on the classification committee or involved in the decision for Plaintiff to be double celled and did not have any authority over Plaintiff's classification. (*Id.* ¶ 7.) Peters was not aware of any prior altercations between Plaintiff and others and was not aware of any danger to Plaintiff. (*Id.* ¶ 8.) Plaintiff disputes this assertion and contends that he told Defendants he was previously assaulted by cellmates and once received a broken jaw. (Dkt. No. 42 at 4, 6-7.) Plaintiff's refusal of the cellmate was a violation of prison regulations. (MSJ,

Peters Decl. ¶¶ 6, 8.) These are the only two RVRs Peters issued against Plaintiff. (*Id.* ¶ 3.)

**Defendant Herndon**

On August 10, 2025, Herndon told Plaintiff that he would be transferred to a different cell because he was no longer on C-Status. (MSJ, Herndon Decl. ¶¶ 3-4.) Plaintiff was on C-Status because he had received at least two serious RVRs within a six-month period. (*Id.* ¶ 4.)

Plaintiff refused to move to a different cell and stated, "I don't trust you guys; you'll say one thing and then do another." (*Id.* ¶ 5.) Plaintiff was provided a final opportunity to move, but he refused. (*Id.*) Herndon informed Plaintiff he would receive a RVR for refusing housing. (*Id.*) Herndon did not force Plaintiff to move to a new cell or accept a cellmate. (*Id.* ¶ 9.)

Herndon was not on the classification committee or involved in the decision for Plaintiff to be double celled and did not have any authority over Plaintiff's classification. (*Id.* ¶ 7.) Herndon was not aware of any prior altercations between Plaintiff and others and was not aware of any danger to Plaintiff. (*Id.* ¶ 8.) Plaintiff disputes this assertion and contends that he told Defendants he was previously assaulted by cellmates and once received a broken jaw. (Dkt. No. 42 at 4, 6-7.) Plaintiff's refusal of the cellmate was a violation of prison regulations. (MSJ, Herndon Decl. ¶ 6.) This is the only RVR Herndon issued against Plaintiff. (*Id.* ¶ 3.)

## III. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

## IV. DISCUSSION

### A. Failure to Protect

The failure of prison officials to protect inmates from attacks by other inmates at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id*. at 837. A prisoner need not wait until he is assaulted or harmed to state a claim and obtain relief. *Id*. at 845; *Gonzalez v. CDCR*, 739 F.3d 1226, 1235 (9th Cir. 2014) (finding standing to bring Eighth Amendment challenge to prison's gang debriefing process, even though prisoner had not yet debriefed, where he alleged risk of retaliation from other gang members).

Defendants first argue that they did not have any control over Plaintiff's housing status.

His housing status was determined by a classification committee, which upon his arrival in 2015 determined he could be double celled. It is undisputed that Defendants were not on a classification committee that determined Plaintiff's housing. Defendants contend that they were therefore not responsible for any deprivation of Plaintiff's rights.

Plaintiff argues that Defendants could have changed his housing status because classification committees have given the authority for single cell status to custody staff. (Dkt. No. 42 at 4.) Plaintiff quotes part of the state regulation that states, "[i]ncarcerated persons shall accept Incarcerated Person Housing Assignments (IPHAs) as directed by staff." (*Id.*; Cal. Code. Regs. tit 15 § 3269(a)). Plaintiff appears to argue that 'staff' in the regulation could be anyone. However, the regulation later explicitly states that a classification committee must review recommendation from custodial or medical staff for placement in a single cell. Cal. Code. Regs. tit 15 §§ 3269(f), (g). Thus, there is no dispute that Defendants did not possess the authority to change Plaintiff's housing status and were not responsible for the alleged deprivation. Plaintiff's housing status was set by the 2015 classification committee hearing and renewed each year after. It is undisputed that Defendants were not involved with any of the hearings.

Plaintiff also contends that Defendants are misleading the Court with the evidence that the 2015 classification committee ruled he could be double celled. (Dkt. No. 42 at 2.) He does not cite any evidence of this nor does he contest the authenticity or accuracy of the exhibit that indicates he could be double-celled. (MSJ, Matsumura Decl. ¶ 6, Ex. D.) The exhibit reflects that at the 2015 classification committee hearing, he was approved for a double cell and that status was renewed each year after. *Id.* Plaintiff also presents additional arguments regarding the 2015 hearing. Yet, to the extent Plaintiff is challenging his classification from 2015, or more recently, no such claim is part of this action.

Even if Defendants had been involved with the classification committee or had the authority to change Plaintiff's housing status, he has still failed to show that they violated the Eighth Amendment. It is undisputed that Plaintiff was never forced to be housed with a cellmate and it is undisputed that he was never assaulted and only had a fear of assault. Defendants have

met their burden in demonstrating that Plaintiff was never injured or placed in danger. Plaintiff's opposition fails to meaningfully contest many of Defendants' assertions and evidence. Plaintiff relies on conclusory allegations with little support that fail to show any issue requiring a trial.

Plaintiff maintains that the alleged deprivation was sufficiently serious. He contends that he needed a single cell because he suffered from PTSD. (Dkt. No. 42-1 at 4.) However, neither his declaration nor the associated exhibits contain the facts or other evidence necessary to support that assertion, and the exhibit on which he relies states only that on September 5, 2024, he did not exhibit any remarkable indications of PTSD to require a single cell. (Dkt. No. 42-1 at 10.)

Plaintiff also argues that any cellmate would be dangerous because he was convicted of patricide. Yet, he does not describe why this crime puts him in danger. Nor does he allege that any of the potential cellmates presented a danger to him or they possessed certain characteristics that put him at risk. While a prisoner need not wait until he is assaulted to state a claim, *see Farmer*, 511 U.S. at 845, Plaintiff's general allegations with no support are insufficient to meet his burden of showing that there is a genuine issue for trial. "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health." *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted); *see Contreras v. Collins*, 50 F. App'x 351, 352 (9th Cir. 2002) (holding that in the Eighth Amendment context, fear of assault in prison as a result of misclassification is insufficient to state a failure to protect claim). Defendants are entitled to summary judgment because there was not a sufficiently serious deprivation.

Even if Plaintiff was in danger, Defendants have met their burden in demonstrating that they did not know of and disregard an excessive risk to his safety. Defendants argue that they were unaware of any danger to Plaintiff. Plaintiff disputes this and contends that he was previously assaulted by cellmates and once received a broken jaw from a fight, and he told Defendants this information. (Dkt. No. 42 at 4, 6-7.) For purposes of this motion, the Court views the evidence in the light most favorable to Plaintiff as the nonmoving party and assumes

that Defendants were aware that a cellmate previously broke his jaw. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

It is undisputed that Plaintiff was transferred to SQRC in 2015, and the events for this case occurred in 2024 and 2025. Plaintiff was only in one fight at SQRC, and he believes it occurred around 2020. While it is not entirely clear from Plaintiff's filings and deposition testimony, it appears that Herndon may have placed Plaintiff with a cellmate who later attacked Plaintiff. However, there are no allegations that Herndon was aware of this incident, and Plaintiff and the cellmate did not report the incident for fear of discipline. (Dkt. No. 42-1 at 3-4.) It is undisputed that other fights with cellmates occurred at other institutions prior to 2015.

Plaintiff states that he told Defendants that his jaw was broken in a prior incident. Plaintiff was not aware of the date during the deposition, nor does he allege that he told Defendants when it occurred, nor does he provide a date in his opposition. In an exhibit attached to his opposition, there is prison paperwork indicating that Plaintiff's jaw was broken in a fight in 1990. (Dkt. No. 42-1 at 24.) Assuming Plaintiff told Defendants about when this incident occurred or even if they discovered this information, his jaw was broken more than 30 years prior to the events in this case. This one incident in 1990 is insufficient to show that Defendants knew of and disregarded an excessive risk to Plaintiff's safety. A prison official need not "believe to a moral certainty" that an inmate is at risk of harm "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted). The undisputed facts demonstrate that Defendants were not aware of any danger to Plaintiff and are entitled to summary judgment.

**B. Deliberate Indifference to Medical Needs**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's

response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that prison staff knew of the seriousness of those needs and chose a path that was both "medically unacceptable under the circumstances" and in "conscious disregard of an excessive risk to [plaintiff's] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004).

Defendants are also entitled to summary judgment for Plaintiff's claim that they were deliberately indifferent to his serious medical needs by attempting to move other inmates into his cell. Plaintiff argues that the fear of a cellmate exacerbated his PTSD from prior attacks and interrupted his sleep. Other than these conclusory allegations he provides little in support of his argument other than citing to some exhibits. However, the exhibits do not support his claim.

An exhibit reflects that on September 5, 2024, he did not exhibit any remarkable indications of PTSD to require a single cell and that on August 27, 2024, it was determined that he did not meet the medical criteria for a single cell. (Dkt. No. 42-1 at 10.) Plaintiff also includes a medical report from a psychologist and psychiatrist that recommended single cell status for psychiatric reasons, but this report is from 1977. (*Id*. at 17.) While Plaintiff needed a single cell for health reasons in 1977, he has not met his burden in showing that he needed one more recently. Defendants have shown that Plaintiff did not have a serious medical need.

Similar to the prior claim, even if Plaintiff had a serious medical need, Defendants were not aware of the seriousness of the need and did not take actions that disregarded an excessive risk to Plaintiff's health. Plaintiff's medical records do not reflect any serious medical need with respect to a single cell and explicitly state that he could be double celled. Plaintiff does not present any allegations that he sought medical help during the relevant time for trouble sleeping or his PTSD. Plaintiff's medical report from 1977 has little bearing on the circumstances more

than 45 years later. Nor does Plaintiff present any other allegations that sufficiently demonstrate a serious medical need or that Defendants were deliberately indifferent with their actions. Summary judgment is granted for this claim.

**C. Qualified Immunity**

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show that the official's conduct violated a constitutional or statutory right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence). "[I]f no constitutional [or statutory] right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional or statutory right? *Saucier*, 533 U.S. at 201; *see Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004) (in performing the initial inquiry, court is obligated to accept plaintiff's facts as alleged, but not necessarily his application of law to the facts; the issue is not whether a claim is stated for a violation of plaintiff's constitutional or statutory rights, but rather whether the defendants actually violated a constitutional right) (emphasis in original). "If no constitutional [or statutory] right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Defendants are entitled to qualified immunity. The facts do not show that Defendants violated a constitutional or statutory right, for either Eighth Amendment claim. Also, even if

Defendants violated a right, it would not be clear to a reasonable officer that his actions were unlawful: Defendants did not have the authority to change Plaintiff's housing status, he was never placed with a cellmate, he never suffered any injury, and Defendants were not aware of any danger to Plaintiff's medical health or safety.

## V. CONCLUSION

Defendants' motion for summary judgment is GRANTED. (Dkt. No. 39.) The Clerk shall terminate Dkt. No. 39, enter judgment in favor of Defendants, and close the file.

**IT IS SO ORDERED.**

Dated: November 19, 2026

RITA F. LIN
United States District Judge